UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASTILLO AT TIBURON
CONDOMINIUM ASS'N, INC.,

    Plaintiff,

v.                                     Case No: 2:20-cv-468-SPC-MRM

EMPIRE INDEMNITY INS. CO.,

    Defendant.
_____/

## OPINION AND ORDER[1]

Before the Court is United States Magistrate Judge Mac R. McCoy's Report and Recommendation ("R&R"). (Doc. 40). Judge McCoy recommends denying Plaintiff Castillo at Tiburon Condominium Ass'n, Inc.'s Amended Motion to Compel Appraisal and Stay Proceedings. Plaintiff objects to the R&R. (Doc. 41). Defendant Empire Indemnity Ins. Co. has responded (Doc. 43), and Plaintiff has replied (Doc. 47). The R&R is ripe for review.

## BACKGROUND

The R&R makes factual findings and recounts this case's procedural history, both of which the Court accepts and adopts. A detailed review of that

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

information is unnecessary. For completeness and context, however, the Court highlights relevant facts below.

Four years ago, Hurricane Irma blew through Florida. In its path was Plaintiff's condominium complex. About nine days after the storm, Plaintiff submitted a claim for roof damage to Defendant, its insurance company.[2] Defendant later advanced Plaintiff a quarter-million dollars for emergency repairs. (Doc. 34-1 at 2). Defendant continued to investigate Plaintiff's claim for several more months. Meanwhile, Plaintiff reported that Hurricane Irma also damaged windows, sliding glass doors, and stucco. Defendant eventually paid Plaintiff nearly $1.5 million to replace its roofs. (Doc. 34-2 at 2).

After that, Defendant turned its focus to Plaintiff's windows, doors, and stucco damage. It inspected Plaintiff's property for days, and Plaintiff's public adjuster provided a 2,764-page report from a consultant on the windows and doors. Defendant also required Plaintiff to submit a signed, sworn proof of loss per the parties' insurance policy and gave Plaintiff two extensions to do so.[3] When Plaintiff's public adjuster asked for a third extension, Defendant denied the request on the due date. Plaintiff thus submitted a proof of loss stating,

---

[2] The claim was for "downed trees and clay tiles that had blown off the roofs of buildings." (Doc. 26-2 at 2). Because both parties only address the roof damage, the Court will too.

[3] The Policy required Plaintiff to send Defendant "a signed, sworn proof of loss containing the information [Defendant] request[s] to investigate the claim" within 60 days of demand. (Doc. 1-1 at 37-38).

"TO BE DETERMINED" for the estimated value of damage. (Doc. 41-1 at 5). Because Defendant warned Plaintiff against such a response, it denied coverage on June 17, 2019, claiming Plaintiff breached its post-loss duties. (Doc. 26-1 at 2, 4).

Fast forward seventeen days. Plaintiff gave Defendant a new proof of loss that included monetary figures. (Doc. 41-1 at 6). For instance, "$21,673,376.61" replaced "TO BE DETERMINED" for the amount claimed under the Policy. (*Id.*). Yet Plaintiff's new statement did little to budge Defendant—at least at first. It denied Plaintiff's request to reopen the claim, rejected the late proof of loss, and refused to extend the Policy's deadlines.

Defendant eventually softened. Although reserving its right to continue to deny coverage, Defendant reinspected Plaintiff's property for another five days. Defendant requested more documents from Plaintiff, which it produced. And Plaintiff sat for an examination under oath and signed the transcripts. The parties even talked settlement. But it was all for nothing. Defendant still denied coverage on June 16, 2020. (Doc. 26-2). It said that Plaintiff's "failure or refusal to comply with its post-loss duties under the Policy materially and substantially prejudiced [Defendant's] investigation of the claim." (*Id.* at 4). This breach of contract suit followed.[4]

---

[4] The Amended Complaint is the operative pleading (Doc. 16), to which Defendant has answered (Doc. 39).

Plaintiff now moves to compel appraisal. (Doc. 20). The Policy's appraisal provision reads, "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss . . . If there is an appraisal, we still retain our right to deny the claim." (Doc. 1-1 at 37). Plaintiff argues the appraisal provision is unilateral, meaning appraisal is mandatory now that it has been demanded. So, according to Plaintiff, the Court has little choice but to compel appraisal. Plaintiff continues that Defendant has admitted its claim is a covered loss because Defendant paid to replace its roofs. Because the parties only dispute the amount of loss, Plaintiff concludes that appraisal is needed.

Defendant views the case posture differently and thus argues against appraisal for two reasons. First, Defendant says because it "wholly denied" covering Plaintiff's windows, doors, and stucco damage, the Court must resolve the coverage dispute before compelling appraisal. Second, Defendant asserts Plaintiff's late proof of loss violated its post-loss duties and consequently appraisal is premature.

The R&R sides with Defendant. It finds appraisal to be premature because "a dispute remains on whether Plaintiff complied with *all* of its post-loss obligations under the Policy." (Doc. 40 at 13 (emphasis in original)). Whether Plaintiff substantially complied with its post-loss obligations is "more appropriately resolved on summary judgment or other appropriate pretrial

4

motion." (*Id.* at 14). It also found no Policy language to support Defendant "waiv[ing] its ability to deny coverage based on non-compliance with post-loss obligations" because Defendant paid to replace roofs, inspected the condominium complex, and entertained settlement. (*Id.* at 15). Finally, the R&R said the Court must determine the preliminary issue of whether Plaintiff satisfied its post-loss duties before it can exercise its discretion to compel appraisal. The Court now reviews the R&R.

## STANDARD OF REVIEW

After reviewing the findings and recommendations, a district judge "may accept, reject, or modify, in whole or in part," the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). The district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *but see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016) ("[W]hen a party fails to object to a magistrate judge's report, we review only for plain error and only if necessary in the interests of justice." (citation omitted)).

## DISCUSSION

After independently reviewing the parties' papers, record, and applicable law, the Court accepts in part and rejects in part the R&R. The Court accepts the R&R's factual findings, procedural history, legal standards, and summary

5

of each party's position. But it rejects the R&R's findings on why not to compel appraisal. In its place, the Court provides the following analysis.

The parties mostly dispute whether this case should go to appraisal now or after the Court decides coverage. Underpinning this debate is the different roles courts and appraisers play in insurance disputes. An appraisal panel decides the amount of a covered loss when the insurer admits to coverage and the parties disagree on the figure. *See Freeman v. Am. Integrity Ins. Co. of Fla.*, 180 So. 3d 1203, 1208 (Fla. Dist. Ct. App. 2015); *cf. CMR Constr. & Roofing, LLC v. Empire Indem. Ins.*, 843 F. App'x 189, 193 (11th Cir. 2021) ("Appraisal is a form of alternate dispute resolution that sets a disputed loss amount." (citation omitted)). The amount-of-loss determination includes, for example, "calculating the cost of repair or replacement of property damaged, and ascertaining how much of the damage was caused by a covered peril as opposed to things such as normal wear and tear, dry rot, or various other designated, excluded clauses." *Citizens Prop. Ins. v. River Manor Condo. Ass'n*, 125 So. 3d 846, 854 (Fla. Dist. Ct. App. 2013) (internal quotes omitted).

Appraisers do not decide coverage—courts do. *See SB Holdings I, LLC v. Indian Harbor Ins.*, No. 20-14729, 2021 WL 3825166, at *1 (11th Cir. Aug. 27, 2021). Coverage questions include whether a loss falls under an insurance policy or was caused by a covered event. *See Citizens Prop. Ins. v. Mango Hill Condo Ass'n 12 Inc.*, 54 So. 3d 578, 581 (Fla. Dist. Ct. App. 2011). It also

includes more specific questions, "such as timely notice of the loss and cooperation with the insurer's investigation." *See* SB Holdings I, 2021 WL 3825166, at *1. In short, courts decide coverages issues and appraisers decide amount-of-loss issues. *Johnson v. Nationwide Mut. Ins.*, 828 So. 2d 1021, 1025 (Fla. 2002)

Here, the parties square off over whether Defendant has admitted to a covered loss. This dispute stems from whether Plaintiff submitted one or two claims for damage caused by Hurricane Irma. Plaintiff says one. Defendant says two. Plaintiff argues it made one claim for the roofs, windows, doors, and stucco damage. Because Defendant paid to replace the roofs, Plaintiff argues that Defendant has admitted coverage leaving only the loss amount for the rest undecided. Defendant characterizes the roof damage as an initial claim, and the windows, doors, and stucco as a supplemental claim. Defendant argues because it denied coverage for the latter, the Court must decide coverage before addressing appraisal. In the end, Plaintiff makes the stronger argument.

Defendant declares Plaintiff made an initial and supplemental claim without citing authority for this position. The record likewise offers Defendant no support. Defendant assigned one claim number to all of Plaintiff's damages. Defendant paid to replace the roofs under Claim Number 5630011344 and denied coverage for the windows, doors, and stucco under the same designation. (Doc. 26-1; Doc. 26-2; Doc. 34-1 at 2). That is not all. In

7

Defendant's first letter denying coverage for the windows, doors, and stucco, it referenced no initial and supplement claim. It instead grouped all damages together as one claim:

> Empire has issued Castillo at Tiburon two payments on *this* claim. The first payment was in the amount of $250,000.00 and was an advanced for anticipated emergency repairs. The second payment was for $1,493,178.02 and was for the replacement of the roofs on the 34 buildings; this payment was issued before all the roofs on the building had been replaced. Thus, Empire has paid a total of $1,743,178.02, on *this* claim. Empire reserves the right to apply over-payments, if any, to any future claims but does not now insist on the return of any such funds.
>
> Castillo at Tiburon has failed to timely submit a full and complete [proof of loss], and the supporting documents, Empire is closing its investigation and denying Castillo at Tiburon's claim for windows, sliding glass doors, and stucco. Empire cannot consider any additional payment for windows, sliding glass doors, or stucco because your client failed to comply with the Policy's terms and conditions that are listed above. . . As for your client's claim for roof damages, Empire issued payment to replace the roofs on all 34 buildings based on the Colonial Roofing contract, minus the Policy's hurricane deductible, and therefore, it is Empire's position that no further payment is warranted. . . .
>
> Empire's investigation of *the claim* and all efforts taken to determine coverage was without waiver of the terms and conditions of the Policy.

(Doc. 26-1 at 5-6 (emphasis added)). Nowhere did Defendant even allude to two claims. The dual characterization first appeared a year later in

8

Defendant's second coverage denial letter, most likely in anticipation of a lawsuit.

More evidence of one claim is Plaintiff having reported the windows, doors, and stucco damage *before* Defendant paid to replace the roofs. And Defendant investigated this damage for months before denying coverage. Thus, this is not a case in which Defendant paid and closed a claim before Plaintiff reported its windows, doors, and stucco damage. See *Galindo v. ARI Mut. Ins.*, 203 F.3d 771, 776-77 (11th Cir. 2000) (denying appraisal where the insureds sought to compel appraisal on supplemental claims made five years after they settled their initial claims without allowing their insurers to first investigate the new supplemental claims).

The Court thus finds, at this stage, that Defendant has admitted to a covered loss and the parties simply disagree on the figure. Under this scenario, appraisal is warranted. But the Court's inquiry cannot end there. Defendant also argues that appraisal is premature because Plaintiff did not satisfy its post-loss obligations. The Court now turns to whether appraisal is ripe.

Before a court can compel appraisal, it must make a "preliminary determination" as to whether a demand for appraisal is ripe. See *Citizens Prop. Ins. v. Admiralty House, Inc.*, 66 So. 3d 342, 344 (Fla. Dist. Ct. App. 2011) (citation omitted); *Citizens Prop. Ins. v. Galeria Villas Condo. Ass'n*, 48 So.3d 188, 191-92 (Fla. Dist. Ct. App. 2010). "A demand is ripe where postloss

9

conditions are met, the insurer has a reasonable opportunity to investigate and adjust the claim, and there is a disagreement regarding the value of the property or the amount of loss." *Am. Cap. Assurance Corp. v. Leeward Bay at Tarpon Bay Condo. Ass'n, Inc.*, 306 So. 3d 1238, 1240 (Fla. Dist. Ct. App. 2020), *review granted,* No. SC20-1766, 2021 WL 416684 (Fla. Feb. 8, 2021) (citation omitted). Considered under this framework, Plaintiff's demand for appraisal is ripe. And here's why.

The parties disagree on the value of Plaintiff's loss—a $20 million disagreement. Predating this conflict, Defendant had a reasonable opportunity to investigate the claim for windows, doors, and stucco. In fact, it spent nearly two years adjusting Plaintiff's claim. During that time, Defendant twice inspected Plaintiff's property: once before denying coverage and again after. Plaintiff also produced documents, sat for an examination under oath, signed the examination transcript, and provided a 2,764-page expert report. These undisputed facts all favor appraisal being ripe.

The Court also finds that Plaintiff satisfied its post-loss obligations. *See SB Holdings I*, 2021 WL 3825166, at *1 ("[U]ntil judicial proceedings had resolved whether [the insured] adequately satisfied its post-loss obligations, any request to compel an appraisal was premature." (footnote omitted)). All agree that Plaintiff submitted a late proof of loss. Plaintiff argues, however, that it cured the untimeliness by submitting a finalized proof of loss seventeen

10

days later. Because of its correction, Plaintiff says Defendant then reinspected the property, received more documents from Plaintiff, and had Plaintiff sit for an examination under oath. With nothing left to do, Plaintiff argues it substantially complied with its post-lost obligations under the Policy. The Court agrees.

The Policy here does not condition appraisal on Plaintiff's compliance with its post-loss duties. Even so, some Florida courts have constructively conditioned an insured's right to invoke appraisal on substantial compliance with the policy's post-loss duties before appraisal will be ordered. *See Triton Renovation, Inc. v. Empire Indem. Ins.*, No. 2:20-cv-432-JLB-NPM, 2021 WL 2291363, at \*5 (M.D. Fla. June 4, 2021); *cf. SFR Services, LLC v. Lexington Ins.*, No. 2:19-cv-229-JES-MRM, 2020 WL 3640540, at \*6 (M.D. Fla. July 6, 2020) (adopting the reasoning that an "insurer must be prejudiced by the insured's non-compliance with a post-loss obligation in order for" the insured to be barred from filing suit). That said, "the nature of the post-loss obligations is merely to provide the insurer with an independent means by which to determine the amount of loss, as opposed to relying solely on the representations of the insured." *Scottsdale Ins. Co. v. Univ. at 107th Ave., Inc.*, 827 So. 2d 1016 (Fla. Dist. Ct. App. 2002) (citation omitted)).

Although Plaintiff provided a late proof of loss, it remedied the situation within days. By doing so, Defendant was able to independently assess the

11

reported damage by reinspecting Plaintiff's property, requesting Plaintiff to produce more documents, and requiring Plaintiff to submit to an examination under oath. Because Plaintiff provided Defendant all it asked post-loss and pre-suit, this Court may order appraisal. *See Triton Renovation,* 2021 WL 2291363, at *5. Plus, nothing happened in the seventeen-day period to prejudice Defendant in adjusting the claim. Other than Defendant's conclusory statements, it never explains how it has been prejudiced. Defendant knew about and investigated Plaintiff's claim for window, door, and stucco damage for months (if not years) before it ultimately denied coverage and this suit began.

The Court thus concludes that for appraisal purposes, Plaintiff substantially complied with its post-loss obligations, and the late proof of loss did not prejudice Defendant. In so finding, the Court notes that the record is sufficiently developed for it to make this decision without an evidentiary hearing or more discovery. For example, there is no factual dispute over whether Plaintiff submitted its proof loss statement and Defendant received it. *See, e.g., First Protective Ins. v. Ahern,* 278 So. 3d 87, 89 (Fla. Dist. Ct. App. 2019) (remanding for an evidentiary hearing because "a factual dispute between the parties existed: the homeowner stated that the letter was sent, and the insurance company denied receiving the letter" (citations omitted)). Also, neither party asked the Magistrate Judge for a hearing on post-lost

obligations. And Plaintiff conditioned its request for a hearing in its objections to the R&R on the Court finding appraisal to be premature, which it does not.

The Court recognizes that it has before refused appraisal until first determining coverage. *See Gulfside, Inc. v. Lexington Ins. Co.*, No. 2:19-cv-851-SPC-MRM, 2020 WL 4582144 (M.D. Fla. Aug. 10, 2020)). But this case is unlike *Gulfside,* in which the Court found an underdeveloped record to decide whether the insured substantially satisfied its post-loss obligations. In *Gulfside*, the insured refused to sit for an examination under oath both before and after suing. That is not the case here, where the record is that Plaintiff acted quickly to remedy the late proof of loss. Only seventeen days passed before Plaintiff submitted a proof of loss with the requisite figures and analysis. Because Plaintiff acted swiftly, Defendant got the chance to investigate the claim for windows, doors, and stucco long before this suit.

To sum up, the Court finds appraisal to be ripe. That finding leaves only the order in which to resolve appraisal and coverage issues. Florida courts have yet to reach a consensus on this issue. The Fourth Circuit says coverage precedes appraisal. *Citizens Prop. Ins. v. Demetrescu*, 137 So. 3d 500, 502 (Fla. Dist. Ct. App. 2014) ("[T]he trial court must resolve all underlying coverage disputes prior to ordering an appraisal"); *Citizens Prop. Ins. v. Mich. Condo. Ass'n*, 46 So. 3d 177, 178 (Fla. Dist. Ct. App. 2010) (same). The Second and Third Circuits offer a more flexible solution. They use a dual-track approach

that gives the trial court discretion to decide the order to resolve issues of damages and coverage. *See Leeward Bay*, 306 So. 3d at 1242 (discussing a DCA split and adopting the dual-track approach); *Sunshine State Ins. v. Rawlins*, 34 So. 3d 753, 754 (Fla. Dist. Ct. App. 2010) (adopting a "dual-track approach" where "the order in which the issues of damages and coverage are to be determined . . . to the discretion of the trial court"). As it has done before, the Court sides with the majority view that gives trial courts discretion over the relative timing of appraisal and coverage determinations. *See Waterford Condo. Ass'n of Collier Cnty., Inc. v. Empire Indem. Ins.*, No. 2:19-CV-81-SPC-NPM, 2019 WL 4861196, at *1 (M.D. Fla. Oct. 2, 2019).

In exercising its discretion, the Court will now compel appraisal. This case involves the amount of loss, and any coverage dispute is intertwined with that matter. Appraisal is thus likely to assist the Court when it later determines coverage. Compelling appraisal "not only upholds the terms of the policy but conserves the parties' and this Court's resources should appraisal resolve the scope of loss issue between the parties without further litigation." *People's Tr. Ins. Co. v. Fernandez*, 317 So. 3d 207, 211 (Fla. Dist. Ct. App. 2021); *see generally State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201-02 (Fla. Dist. Ct. App. 1995) (noting "the general, even overwhelming, preference in Florida for the resolution of conflicts through extra-judicial

means, especially arbitration, for which the parties have themselves contracted").

Defendant raises two ancillary issues that merit brief attention. First, Defendant asks the Court to require the parties' appraiser to use a delineated, line-item award form. This request seems practical (and likely helpful), but no policy language requires such a form. Because of the policy's silence, the Court will order no specific form. *See Waterford Condo.*, 2019 WL 3852731, at \*3; *Coral Reef Metro, LLC v. Scottsdale Ins.*, No. 2:18-cv-460-SPC-UAM, 2019 WL 700114, at \*1 (M.D. Fla. Feb. 20, 2019). To hold otherwise would require the Court to insert its own condition into the policy, which is simply not allowed.

Second, Defendant claims that Plaintiff must plead and prove the requisite elements for injunctive relief to prevail on its appraisal request. (Doc. 26 at 10). Defendant says that Plaintiff is seeking to compel it to act (*i.e.*, proceed to an appraisal of the supplemental claim) which is effectively a motion for injunctive relief. Because Plaintiff's motion mentions none of the requisite elements for injunctive relief, Defendant argues the Court should not compel appraisal. Defendant raised a similar argument in moving to dismiss the Amended Complaint, which the Court rejected. (Doc. 38). For the same reasons, the Court denies Defendant's request to insert the elements for injunctive relief into these proceedings.

15

In conclusion, the Court will compel appraisal and stay this case. In doing so, the Court finds appraisal to be ripe because Plaintiff substantially complied with its post-loss obligations and Defendant was not prejudiced by Plaintiff's late proof of loss. Using the dual track approach, the Court finds it appropriate to exercise its discretion to compel appraisal.

Accordingly, it is now

**ORDERED:**

1. The Report and Recommendation (Doc. 40) is **ACCEPTED in part and REJECTED in part**. The Court accepts the Report and Recommendation's factual findings, procedural history, legal standards, and summary of each party's position. But the Court rejects the Report and Recommendation as to its findings on appraisal as explained in this Opinion and Order.

2. Plaintiff's Amended Motion to Compel Appraisal (Doc. 20) is **GRANTED**.

3. This case is **STAYED** pending appraisal, and the Clerk must add a stay flag to the file.

4. The parties are **DIRECTED** to jointly notify the Court, on or before **October 12, 2021**, of the names of (a) each party's selected appraiser; and (b) the umpire, all of whom must be picked per the Policy's terms and conditions.

5. The parties are **DIRECTED** to file a joint report on the status of appraisal on or before **December 27, 2021**, and every ninety days thereafter until appraisal has ended.

6. Within **seven days** of appraisal ending, the parties are **DIRECTED** to jointly notify the Court of (a) what issues, if any, remain for the Court to resolve; (b) whether the stay needs to be lifted; and (c) how this action should proceed, if at all.

**DONE** and **ORDERED** in Fort Myers, Florida on September 28, 2021.

*SHERI POLSTER CHAPPELL*
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record